J-S65015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| F.Z.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| H.S.K., | |
| Appellee | No. 1505 EDA 2014 |

Appeal from the Order entered April 1, 2014,
in the Court of Common Pleas of Montgomery County,
Civil Division, at No(s): 2012-18218

BEFORE: PANELLA, J., OLSON, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.          **FILED DECEMBER 11, 2014**

F.Z.B. ("Mother") appeals from the Order entered on April 1, 2014, awarding primary physical custody of the parties' minor children to Mother and partial physical custody to H.S.K. ("Father"), and denying Mother's Petition to relocate with the Children to Australia. We affirm.

The relevant facts of this case are as follows. Father currently resides in Bryn Mawr, Pennsylvania, with his girlfriend and her two children. Mother also resides in Bryn Mawr. Mother and Father are the natural parents of two children, J.K. (born in January 2005) and A.K. (born in February 2007) ("the Children").

Mother is originally from Australia; she came to the United States in 2002 in order to marry Father. The marriage was an arranged marriage.

_____

* Retired Senior Judge specially assigned to the Superior Court.

Mother and Father agreed at the time of their marriage that they would live in and raise their family in the United States. Both of Mother's and Father's Children were born in the United States and are citizens of the United States.

After arriving in the United States, Mother worked for a period of two and a half years. Both parties agreed that, following the births of the Children, Mother would primarily stay at home to care for the Children. Father also assisted in the Children's care and worked full time as a physician.

Mother testified that, prior to marrying Father when she lived in Australia, she worked as an assistant manager for KPMG, LLP, a worldwide accounting firm. *See* N.T., 11/1/13, at 121. Moreover, Mother further testified that, during her marriage to Father, she worked as a senior auditor for KPMG in New York and as a senior auditor for Morgan Stanley. *See id*. In addition, Mother also testified that she stopped working for Morgan Stanley because she was having her first child, and that she did not work in 2005 because she was on maternity leave. *See* N.T., 8/8/13, at 9, 21. Mother noted that her income with Morgan Stanley was about $70,000, and that she formally resigned from Morgan Stanley in June 2005. *See* N.T., 8/8/13, at 21-23. Mother stated that, if she were to move back to Australia, she would be "eligible to start over again" in becoming a chartered

accountant. N.T., 11/1/13, at 123. Mother did not have any job offers from any firms in Australia as of the time of the hearings.

In 2006, the family left New York to move to San Francisco for Father's medical training and employment. In 2008, the family moved to Las Vegas for Father's job. Mother and Father resided there with the Children until November 2010, at which time Mother moved with the Children to Pennsylvania with the intention that Father would follow them at a later date. *See* N.T., 11/6/13, at 230-232. Father testified that, during the period that Mother and the Children lived in Pennsylvania, he traveled to see them on multiple occasions. *See* N.T., 11/7/13, 62. Mother testified that she and the Children lived in her brother-in-law's house for approximately seven months.

Mother and the Children then traveled to Melbourne, Australia, on June 16, 2011. The purpose for their visit was to visit Mother's family. *See* N.T., 1/15/14, at 8, 9. Both Mother and Father testified that the round trip tickets were purchased for the trip with a return trip date in September 2011. *See* N.T., 11/1/13, at 102; N.T., 1/16/14, at 9. Mother testified that she and Father never discussed living in Australia together. *See* N.T., 1/15/14, at 6. Mother further testified that she did not have a job or attend school or take classes while in Australia. *See* N.T., 8/8/13, at 26. Mother and the Children did not return to the United States as scheduled in September 2011.

Initially Father agreed that they could extend their visit, but, at the end of November 2011, he became upset.

Father testified that it was his understanding that Mother would eventually return to the United States with the Children, and that the first time he learned that Mother might not be returning was in an e-mail dated October 7, 2011. *See* N.T., 1/15/14, at 9-12. Father also testified that, due to Mother's refusal to tell him when she and the Children would be returning to the United States, he filed an Application for Return of the Children under the Hague Convention on the Civil Aspects of International Child Abduction in the beginning of 2012. *See* N.T., 1/15/14, at 20-21. During the entire time that Mother and Children were in Australia, Father continued to support them.

On June 25, 2012, the Honorable Justice Bennett of the Family Court of Australia at Melbourne issued an order which stated that the Children were to be returned to the United States "pursuant to Family Law (Child Abduction Convention) Regulations 1989." The Australian order also placed certain financial obligations and conditions on Father prior to Mother's return to the United States. Pursuant to the Order of June 22, 2012, Father was ordered by the Family Court of Australia at Melbourne to provide Mother with $35,000.00, airline tickets for Mother and the Children to return to the United States, and a car for Mother's use upon her return to the United States. These conditions were met by Father, and Mother and the Children

returned to the United States on October 10, 2012. *See* N.T., 11/1/13, at 111.

Father testified that, when Mother returned to the United States with the Children, she refused to tell him where she and the Children were living. *See* N.T., 1/15/24 at 70-71. Father also e-mailed Mother asking for her address so he could send one of the Children a birthday present, but she refused to provide the address. She also refused to allow Father telephone conversations with the Children. Father was limited to his scheduled Skype sessions. *See* N.T., 1/15/14, at 87.

Father testified that, if the Children were permitted to relocate to Australia with Mother, he would lose communication with the Children on a regular basis, and would not be involved in any decision making process that would involve the Children. *See* N.T., 1/15/14, at 81. Father further testified that, seeing his Children only a few times a year would not be enough, and that it would not be easy for him to regularly travel to Australia. *See id*. Father noted that, while the Children were in Australia, Mother did not send the Children back to the United States to see him. *See id*., at 81. Father noted that he was employed as an anesthesiologist for Premier Anesthesia, and that he would go to visit the Children as often as he could, but that his job and the amount of time involved in traveling would present problems. *See id*., at 91-92.

On July 9, 2012, Mother filed the June 22, 2012, and June 25, 2012 Australian Orders with the Montgomery County Court of Common Pleas for the purpose of registering the Orders, and arranged to provide enforcement of the Orders so that Father would have regular access to the Children. On July 11, 2012, while Mother and the Children were still in Australia, Mother's counsel notified Father's counsel that Mother intended to return to Australia.

On July 26, 2012, Father filed a complaint in Divorce in Clark County, Nevada, which was the location of the marital home and the last place that Mother and Father resided together with the Children. On July 27, 2012, Father filed Preliminary Objections to Mother's proposed relocation to Australia. On July 27, 2012, Father also filed Preliminary Objections in the Montgomery County Court of Common Pleas to jurisdiction and venue and to the registration of the June 22, 2012 and June 25, 2012 Orders. The court also considered Mother's Complaint to Confirm Custody filed on August 9, 2012, Father's May 13, 2013 Counter-Affidavit Regarding Relocation, Mother's June 7, 2013 Motion for Relocation, and Father's June 19, 2013 Answer to Plaintiff's Motion for Relocation and Counterclaim for Custody. Hearings were held on August 8, 2013, November 1, 2013, November 6, 2013, and January 15, 2014. The trial court issued an Order entered on April 1, 2014, granting Mother primary physical custody of the Children and Father partial physical custody. Mother's motion for relocation with the Children to Australia was denied.

On April 30, 2014, Mother filed a timely notice of appeal. In addition, Mother filed a concise statement of matters complained of on appeal on that date pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following issues for our review:

> A. Did the [t]rial [c]ourt err by abusing its discretion as to the manner in which it weighed and analyzed factors 1, 2, 3, 5, 6, 7, and 8 of 23 Pa.C.S.A. § 5337(h) and thereafter failing to conclude that the best interest of the [C]hildren warrant their relocation to Australia[?]
>
> B. Did the [t]rial [c]ourt err by abusing its discretion by denying approval of Mother's relocation of the [C]hildren to Australia despite concluding that it was in the best interests of the [C]hildren for Mother to have primary physical custody of the [C]hildren after weighing the custody factors set forth in 23 Pa.C.S.A. § 5328(a)[?][1]

Brief for Appellant at 9.

The scope and standard of review in custody matters is well-established.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual

_____

[1] Mother initially raised a third issue in her 1925(b) statement, but Mother has consolidated arguments raised in her third issue within her discussion of Issue 1.

conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr.*, *supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being. *See Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006).

Because the hearing in this matter was held in March 2014, the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, is applicable. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody

evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply). Section 5328(a) provides an enumerated list of factors a trial court must consider in determining the best interests of a child when awarding any form of custody:

§ 5328. Factors to consider when awarding custody.

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

Separately, § 5337(h) enumerates ten factors a court must consider in determining whether to grant a proposed relocation:

(h) *Relocation factors.*--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h)(1-10).

This Court has stated, in relevant part, that

-11-

> [w]hen deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. *E.D. v. M.P.,* 33 A.3d 73, 80 (Pa.Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa .Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. *E.D.*, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. *Id*.
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.,* 70 A.3d 830, 835 (Pa. Super. 2013).

*A.V.*, 87 A.3d at 822-823.

In this case, the trial court set forth a detailed and comprehensive analysis of each custody factor of § 5328(a) and each relocation factor of § 5337(h) in its opinion accompanying the subject order. **See** Trial Court Opinion, 6/9/14, at 6-9 and 12-33.

Upon review of the record, we conclude that there is no reason to disturb the order granting Mother primary physical custody and Father partial physical custody, and denying Mother's relocation request. The trial court thoroughly considered the testimony and the evidence and made appropriate determinations on the credibility and the weight of the evidence. In addition, the court applied all of the § 5328(a) factors and the § 5337(h)

factors, and properly concluded Mother failed to satisfy her burden in establishing that relocation will serve the Children's best interest.

Accordingly, we affirm the trial court on the basis of the thoughtful and well-written opinion of the Honorable Patricia E. Coonahan.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2014